

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2006 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,            )<br>                                    )<br>              Plaintiff,            )<br>                                    )<br>         v.                         )<br>                                    )<br> GERALD M. SHAW, and GREGORY         )<br> DE LAVALETTE,                       )<br>                                    )<br>              Defendants.           )<br>                                    )<br> _____ ) | No. SA CR-__SACR 07- 191__<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1343: Wire Fraud;<br>18 U.S.C. § 1956(a)(1)(A)(i):<br>Money Laundering; 18 U.S.C.<br>§ 1957: Money Laundering;<br>18 U.S.C. § 2(b): Causing An<br>Act To Be Done] |

The Grand Jury charges:

COUNTS ONE through TEN

[18 U.S.C. §§ 1343 and 2(b)]

A. INTRODUCTION

At all times relevant to this Indictment:

   1.  Defendant GERALD M. SHAW ("SHAW") was an attorney practicing law in Newport Beach, California.

   2.  Defendant GREGORY DE LAVALETTE ("DE LAVALETTE") was an associate of defendant SHAW.

GWS:gws

B.   THE SCHEME TO DEFRAUD

3.   Beginning at a time unknown to the Grand Jury and continuing to on or about September 19, 2007, in Orange County, within the Central District of California, and elsewhere, defendants SHAW and DE LAVALETTE, together with others unknown to the Grand Jury, knowingly and with the intent to defraud, devised, participated in, and executed a continuing scheme to defraud and to obtain money from victim-investors by means of materially false and fraudulent pretenses, representations and promises, and by the concealment of material facts in connection with and through fraudulent investment schemes.

4.   Defendants SHAW and DE LAVALETTE devised the scheme to operate, and the scheme did operate, as follows:

    a.   To obtain the victim-investors' money, defendants SHAW and DE LAVALETTE would use material false promises and statements, and concealment, including, without limitation, the claim that they would use the victim-investors' funds to generate returns for them through investments in high-yield trading programs.

    b.   Defendants SHAW and DE LAVALETTE would solicit victim-investors to invest in certain purported high-yield investments under the false pretenses that the victim-investors would earn rates of return as high as 30% or 40% a week or more.

    c.   Rather than using the victim-investors' funds in the manner promised and described, defendants SHAW and DE LAVALETTE would use the funds to enrich themselves, for business and personal uses, and to further promote the

scheme.

5. To execute the scheme, defendants SHAW and DE LAVALETTE made and caused others to make false and deceptive statements to prospective and existing victim-investors, including, without limitation, the following:

    a. That victim-investors' funds would be placed by defendants SHAW and DE LAVALETTE into high-yield investments.

    b. That defendant SHAW offered high-yield investments which paid a weekly return as high as 30% to 40% a week.

    c. That defendant SHAW offered high-yield investments which paid a return of $5 million to $10 million a month.

    d. That victim-investors' funds would be pooled with funds from other investors.

    e. That victim-investors' funds would be placed in an account at ODL Securities in London, England, and used solely as collateral.

    f. That victim-investors' funds would be refunded within thirty days of a request by the victim-investors for a refund.

    g. That defendant SHAW was the "paymaster," "trader," or "trustee" of victim-investors' funds.

    h. That defendant SHAW bought and sold AA rated bank notes and securities.

    i. That defendant SHAW had successfully completed similar high-yield investment offerings in the past and had many satisfied clients from such investments.

    j. That defendant DE LAVALETTE would assist victim-

investors in making investments by contributing DE LAVALETTE's own money derived from a loan against his home or from his own funds; and

    k.  That victim-investors would become partners in an investment with defendants SHAW and DE LAVALETTE.

6. At the time defendants SHAW and DE LAVALETTE made and caused these statements to be made to prospective and existing victim-investors, such statements were false, and defendants SHAW and DE LAVALETTE knew they were false, in that:

    a.  Victim-investors' funds were not placed by defendants SHAW and DE LAVALETTE into high-yield investments.

    b.  Defendant SHAW did not have access to high-yield investments which paid a weekly return as high as 30% to 40% a week.

    c.  Defendant SHAW did not have access to high-yield investments which paid a return of $5 million to $10 million a month.

    d.  Victim-investors' funds were not pooled with funds from other investors.

    e.  Victim-investors' funds were not placed in an account at ODL Securities in London, England, and used solely as collateral.

    f.  Victim-investors' funds would not be refunded within thirty days of a request by the victim-investors for a refund.

    g.  Defendant SHAW was not the "paymaster," "trader," or "trustee" of victim-investors' funds.

  h. Defendant SHAW did not buy and sell AA rated bank notes and securities.

  i. Defendant SHAW had not successfully completed similar high-yield investment offerings in the past and did not have many satisfied clients from such investments.

  j. Defendant DE LAVALETTE would not assist victim-investors in making investments by contributing DE LAVALETTE's own money derived from a loan against his home or from his own funds; and

  k. Victim-investors would not become partners in an investment with defendants SHAW and DE LAVALETTE.

 7. In carrying out the scheme to defraud, defendants SHAW and DE LAVALETTE knowingly concealed and caused to be concealed from prospective and existing victim-investors the following material facts:

  a. Defendant SHAW used victim-investors' funds for personal expenses.

  b. Defendant DE LAVALETTE used victim-investors' funds for personal expenses.

C. <u>USE OF THE WIRES</u>

 8. On or about the dates set forth below, in Orange County, within the Central District of California, for the purpose of executing and attempting to execute the above-described scheme to defraud and to obtain money from victim-investors by means of materially false and fraudulent pretenses, representations and promises, and by the concealment of material facts, defendant SHAW caused, and aided and abetted the transmission of the following by means of wire communication in interstate commerce,

in violation of Title 18, United States Code, Sections 1343 and 2:

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| ONE | 4/6/05 | $300,000 from account of J.F. at Bank of America in California to Deutsche Bank account in New York of defendant SHAW |
| TWO | 7/19/05 | $150,000 from account of BNE Enterprises at Orange Savings Bank in Texas to Deutsche Bank account in New York of defendant SHAW |
| THREE | 7/29/05 | $100,000 from account of S.S. at Prosperity Bank in Texas to Deutsche Bank account in New York of defendant SHAW |
| FOUR | 8/5/05 | $115,000 from account of S.S. at Bank Prosperity in Texas to Deutsche Bank account in New York of defendant SHAW |
| FIVE | 9/20/05 | E-mail from defendant SHAW in California to S.S. in Texas |
| SIX | 12/14/05 | E-mail from defendant SHAW in California to S.S. in Texas |

9.  On or about the dates set forth below, in Orange County, within the Central District of California, for the purpose of executing and attempting to execute the above-described scheme to defraud and to obtain money from victim-investors by means of materially false and fraudulent pretenses, representations and promises, and by the concealment of material facts, defendants SHAW and DE LAVALETTE caused, and aided and abetted the transmission of the following by means of wire communication in interstate commerce, in violation of Title 18, United States Code, Sections 1343 and 2:

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| SEVEN | 2/8/06 | $200,000 from account of Princeton Mortgage at J.P. Morgan Chase Bank in New York to Bank of America account in California of defendant SHAW |
| EIGHT | 2/24/06 | $125,000 from account of Princeton Mortgage at J.P. Morgan Chase Bank in New York to Bank of America account in California of defendant SHAW |
| NINE | 4/12/06 | $50,000 from account of Princeton Mortgage at J.P. Morgan Chase Bank in New York to Bank of America account in California of defendant SHAW |
| TEN | 7/12/06 | $10,000 from account of Princeton Mortgage at J.P. Morgan Chase Bank in New York to Bank of America account in California of defendant SHAW |

COUNT ELEVEN

[18 U.S.C. § 1956(a)(1)(A)(i)]

10. On or about the following dates, in Orange County, within the Central District of California, and elsewhere, defendant SHAW knowingly conducted, attempted to conduct, and commanded, induced and procured the following financial transaction affecting interstate and foreign commerce, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of wire fraud, with the intent to promote the carrying on of said wire fraud, in violation of Title 18, United States Codes, Section 1956(a)(1)(A)(i):

| Count | Date | Transaction |
|---|---|---|
| ELEVEN | 4/7/05 | Transfer of $35,000 from account of defendant SHAW at Deutsche Bank to account of defendant SHAW at Bank of America |

COUNT TWELVE

[18 U.S.C. § 1957]

11. On or about the following dates, in Orange County, within the Central District of California, and elsewhere defendants SHAW and DE LAVALETTE did knowingly engage and attempt to engage in the following monetary transaction by, through, or with a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit, transfer, or exchange of monetary instruments in amounts greater than $10,000, such property having been derived from a specified unlawful activity, that is wire fraud in violation of Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1957:

| Count | Date | Transaction |
|---|---|---|
| TWELVE | 2/10/06 | Issuing of check for $53,481.56 from account of defendant SHAW at Bank of America to Harloff BMW |

A TRUE BILL

_____S/_____
Foreperson

GEORGE S. CARDONA
United States Attorney

THOMAS P. O'BRIEN
Assistant U.S. Attorney
Chief, Criminal Division

WAYNE R. GROSS
Assistant United States Attorney
Chief, Santa Ana Branch Office

9